Mr. Alioto, you are first up. You've got ten minutes, but you reserve two minutes for rebuttal. Thank you, Your Honor, and may it please the Court. The two principal issues here are matters of law. The question is whether or not the lower courts are required to follow the decisions by the Supreme Court, none of which has been overruled. And the second is whether or not, after a merger and from the damages caused after the merger, that the plaintiff is entitled to trial by jury under the Seventh Amendment. In this case, there was a trend in the airline industry, rather robust, beginning in 2010. It began with Delta buying Northwest Airlines, United buying Continental Airlines, Southwest buying Air Trans Airlines. So the trend was going from eight to four airlines in the United States within almost a five-year period, and the last being the U.S. purchase of American Airlines. And that was finally consummated against our request for an injunction to prohibit it as a violation of Section 7 of the Clayton Act, under Section 16 authority, giving us the right to challenge any merger and or ask for divestiture. Your principal argument is that we should still be following Brown-Chu. Hasn't the Supreme Court gone beyond just the market share and haven't lots of courts done that as well, including our court? A lot of courts, including this court, have done that, but that's contrary to the Supreme Court decisions. What about general dynamics? General dynamics is an entire- I'm asking a question, please. In general dynamics, the court affirmed a lower court's decision to look at other factors. So why doesn't that undermine your argument, that it should only be one factor? As Judge Posner said in his analysis, that case is entirely different from any other case because there was no future to it. The determination was based upon percentages of the market, but they had no future. It was based upon contracts that they've already used. But I don't read Judge Posner's decision- First of all, I'm going to leave aside the fact that it's a Seventh Circuit case and not precedential to us when we have United States v. Waste Management. But even just taking it on its merits, I don't read Judge Posner's decision as supporting the incipiency doctrine, which I think that's what you're advocating for. I'd rather read it as some sort of economic doctrine, which I would think would incorporate more factors than just one. So if you could please explain why I'm wrong. Because Judge Posner specifically noted that those decisions were not overruled. He specifically noted the FTC did not have to do what it did. But Judge Posner, as the court knows, is not a particular fan of this section of the antitrust law. Nonetheless, went ahead and analyzed it differently. But he did the same thing. He affirmed the judgment. But he began by saying it hasn't been overruled, period. But part of our job is to harmonize law, right? Like we need to find some sort of unifying theory for why all of these complicated sentences come together and are able to make something. And what I am not hearing from your papers is how you reconcile the cases like United States versus Waste Management and General Dynamics score with what the Supreme Court said in Brown Shoe. And I think part of your need right now is to explain how we, what we do with the body of law that says we've moved on. Well, it's not that you've moved on, Your Honor, if it pleased the court. Mr. Morris made that very point. The so-called guidelines and the so-called moving on or the so-called passe or obsolete law is still the law. And he admitted that not only is it not the law, but it has influenced courts throughout the country. There's no question about that. And that has done some sense. I was going to say, though, I mean, look, we have a couple of precedents, including waste management, where we have made it pretty clear that this kind of burden shifting is appropriate. So you're asking us to overturn prior panels of this court in order to adopt the pure understanding of the Supreme Court's precedent. That's really what you're asking us to do, right? No, Your Honor. I'm asking you to obey the Supreme Court. But what are you asking us to do with the, with waste management and Broadway delivery versus EPS? Those were based upon a theory that is not the law. It is not the law according to the Supreme Court. When and if the Supreme Court wants to reverse itself, it can, or Congress can. But you're asking us then to ignore those because you're saying the Supreme Court trumps, right? I am, Your Honor, I am asking you to follow the Supreme Court, not asking you to do anything else. But you're really asking us then to sort of take this on bonk, right? Because we don't have the authority to overturn a panel of our court unless we go on bonk, right? It is not that you're overturning necessarily. If you want to go further, that's okay. Waste management was entirely different because it was a regulatory issue. It is not, it was not an issue that could, where one competitor took over another competitor. It's very clear that the Supreme Court, which has, by the way, a policy of the United States, and which simply includes the social and political importance of the antitrust laws, which the merger do not. Does it make sense to look only at one factor? Isn't it more logical to look at a combination of factors that impact this? Judge Chin, whether or not it's logical. This is what the Supreme Court has said, and consistently, and seven decisions in a row. They said it was their policy. They said about with regard to general dynamics, general dynamics had no future, so it was like a failing company. Those are the facts of that case. Waste management is a case where it was a regulatory issue. The Supreme Court has been absolutely clear. Now, if they wanted to reverse themselves, which they never have, and there have been social values, obviously, they can do it. But they and they alone can do it. But even, aren't you even reading the Supreme Court precedents a little too rigidly? I mean, I'm looking at the Philadelphia National Bank, where even in that case, there's an acknowledgment that market share is not necessarily going to be the basis for concluding that it's anti-competitive, that there's an opportunity to clearly show that the merger is not likely to have such anti-competitive effects. That's where the Supreme Court has made it clear that fundamentally what they're saying, as Judge Posner said, and as Philadelphia Bank says, is that if there's a non-trivial transaction and the elimination of a significant competitor, that's it. That's fundamentally it. And so if you have percentages like Alcoa, in the Alcoa case, the Alcoa case, they purchased their realm cable for what? One percent of the market. Vons is two percent and three percent. It's that there's a political and social prominence with regards to the enforcement of the antitrust laws under Section 7. They didn't like mergers. It's against the policy of the United States, which is stated clearly in the Brown-Shoe case, that we favor internal expansion by competition, not combination. Thank you, Your Honor. Two minutes? We have two minutes for rebuttal, yes. Is that okay? Yes. Thank you. Okay, next we'll hear from Mr. Wall. Thank you, Your Honors, and may it please the Court. I do think it is correct that certainly no later than this Court's decision in the waste management case in 1984, the totality of the circumstances of approach to mergers is the law of this circuit. That actually begins. There's a series of Second Circuit cases. The Second Circuit happened to have been sort of out ahead of this after the General Dynamics case, the Freyhof Corp versus FTC in 1979 was the first, the Broadway Delivery versus UPS in 1981, and then waste management in 1984. And all of those cases, in one way or the other, says it's too simplistic to just look at statistics and condemn something and move on. You have to take a more searching look at the question of market power. Now, all of that is very much consistent with Philadelphia National Bank. The Philadelphia National Bank of those 1960s cases is still good law, and everyone still follows it. It has been incorporated in recent years into what we call the Baker-Hughes three-step process, which this Court, the Second Circuit itself, has not embraced, but it is used routinely. The government uses the DOJ, the FTC. Defendants use it. Everybody uses it. And it's just- Are you asking, do you think we need to decide by adopting it expressly? No. Do you think we can do it under existing precedent? Absolutely. Because all it does, the only significance of the Baker-Hughes is to carve out a piece of the burden for the defendant, which is the second step, which says you have to do something to establish that the statistical case is unreliable. But if you just take that away, you just get a regular totality of the circumstances test that we're used to in the law all the time, with the plaintiff having the burden of proof. But our last pronouncements on this are pretty old themselves, not as old as the Supreme Court cases, but, you know, we're talking about the 80s pretty much, right? They are, but they're actually reflective of the time and the development of antitrust jurisprudence. Okay. So is there somebody doing something else other than this sort of burden-shifting test? No. No. No. I think it is used routinely. Again, you could pick up a DOJ or FTC brief on a merger challenge. So I think following up on Judge Perez's question, you're not asking us, nonetheless, to adopt a more formally a burden-shifting approach that everybody else has. No, what I'm simply pointing out is that that's what Judge Lane did, and it's certainly not error to organize it that way. It is just a way of going through the totality of the circumstances. Now, what happened in this case is he gave them the benefit of the Philadelphia National Bank presumption, but then he took evidence. We had a week-long bench trial, and he took evidence about a lot of other things about the industry, including the fact that the trial was over five years after the merger had closed, and there was a very large record of the actual effects, the fact that output had been expanded, the fact that fares had actually gone down. So this is a very normal analysis. Getting back to one of the comments that Judge Perez made, this is essentially what happened in that Hospital Corporation of America case as well. The FTC issued a 117-page opinion that went through everything, and Judge Posner went through all of the major arguments. As Judge Chin pointed out, it's not crazy at all to be comprehensive, to do more work, to try to figure out what the right answer is, and the arc of the law in this area, beginning with general dynamics, has been to focus on the competitive effects in ever more sophisticated ways. Well, that may be the arc of the law. That's also the text of the statute, right? I think so, because what the statute asks us to consider is what the likely competitive effects are. Competitiveness, it's not simply about the market share. It's not about the market share. I don't want to ever come across as saying that I think that the market share component of this isn't important, because it isn't important. It sets the context for the evaluation of the other factors. But if one were to look at the most recent merger guidelines from the Department of Justice and the FTC, it's now been relegated to sort of co-equal status with a number of other sources of evidence about likely competitive effects. So it's about competitive effects. That's what it's about, and it's about using the best tools that we have. Now, in what would happen below, which has happened in a number of cases in which Mr. Aliotta has brought against airline mergers, is the plaintiff's analysis just stopped with market shares. And Judge Lane had made it very clear in his summary judgment decision that that was going to be a problem at trial, that he was going to let them get away with that for purposes of summary judgment. But at trial, he needed to see some meaningful competitive effects analysis. And it just wasn't a contest at that point. There was very, very little put in. It's hard to know what a particular market share means, whether it's 10 percent or 40 percent, without looking at other factors. I think the airline industry, Judge Chen, is a great example of that, because they call it capital on wings, right? The airlines can reconfigure themselves in lots of different ways and decide to fly different routes. So the relevant markets which are creating these shares are origin and destination points. But the airlines that serve them can change all the time, with the exception of a handful of places, regrettably New York, one of them where you have crowded skies and slot controls and things like that. Entry is very easy. This was Judge Winter's point in the waste management case. You have to look at entry conditions. So unless you go down that path, you could potentially get a false positive reading of the anti-competitive effects. And that's really all that's what the Supreme Court was saying in general dynamics. I want to make a point that Judge Sullivan, to pick up on something you said, general dynamics didn't just sort of spring out of the air. Most of the work that's done in that case is by citation to Philadelphia National Bank. Philadelphia National Bank is the critical case here in which the court both establishes the presumption from shares, but also says that it's rebuttable. That's really the foundational point. Now, Mr. Aliotto is right that in a couple of cases, particularly Vaughn's and Brown-Shue, it didn't seem that the court was going on and doing the rest of the analysis. It was more or less stopping at share. But it certainly didn't do that in Philadelphia National Bank, and it didn't do that in general dynamics. Now, it so happens, while these cases have not been overruled, the same year as general dynamics, Congress amended the Expediting Act so that there was no longer automatic appeals to the Supreme Court from government antitrust cases. And they haven't taken a merger case since. And that's just the way it is. But the courts of appeal took over. And the courts of appeal over the last 50 years, whether they're using Baker-Hughes or whether they're using a general totality of the circumstances test, have absolutely put the emphasis on the competitive effects analysis in tandem with the structural analysis. Because this is the last time you're up here for us, can we move on to the argument about the motion for leave to amend? Sure. Can you explain why it wasn't abuse of discretion when we're generally lenient toward these things? Well, so two points about that. First of all, with respect to what Mr. Alioto said, there isn't a legal issue here about the right to a jury trial. There's no – nobody is arguing that there wouldn't be a right to a jury trial if there was a damages claim. What had happened in the early part of a five-year chronology is that plaintiffs were given repeated opportunities to try to plead an actual damages claim, as opposed to just saying, I want to have a damages claim, therefore I get a jury trial, actually plead it, give me some facts. And Judge Lane, with the patience of the ages, gave them opportunity after opportunity, and they couldn't do it. So there's a point then in 2017 in which they say that they're going to proceed on the basis of what was then the operative complaint for injunctive relief only, and in a very belt-and-suspenders way, Judge Lane says, I want a stipulation in writing that says that you are going to accept the jurisdiction of the bankruptcy court in a bench trial for all purposes, which is what happens on February 22, 2017 at SA 115. Now, later on, at the very, very end of the case, after this issue is really settled from everyone's perspective, there is a final effort, which is based upon a misreading of something that Judge Lane said in denying summary judgment, that where they argue we do have a damages claim, we are entitled to a jury trial at this point. Judge Feiler thought that that argument had already been waived by virtue of sitting on rights for two years since the 2016-2017 events, but Judge Lane, again, giving them the benefit of the doubt, wrote a decision with four different factors as to why it was untimely, part of which, which to me sounds more of an estoppel than a waiver. I don't know that the distinction means a whole lot, but it sounds much more as you're bringing this up much too late. We're much too close to trial right now. You're going to throw the schedule off, and those are circumstances in which this court and pretty much all courts of appeal are generally very deferential to the district court judge, or in this case the bankruptcy judge, as the person who's been managing this process. So I think that they had every possible opportunity. What they don't have is an actual damages case, and that's really the root of it. Thank you, Your Honors. All right, thank you. Mr. Aliotto, you have two minutes for rebuttal. I think it is extremely important to read what Mr. Maris said. He's the chairman of the Federal Trade Commission, and we put it out twice, and it concedes that the courts have gone, that they've been influenced. And he says, you know, that these lack law. It's at page nine of our reply briefing before. They formally bind no one, not the courts, not other countries, not even the Department of Justice, yet they have exerted enormous influence on the antitrust enforcement community and the courts in the United States. So we concede the point. We concede that point. But we say, again, that's not the law. It did not go through any hearings. It was not argued in the Congress or in the Senate, and it did not change the law whatsoever. And so if it's not reversed, and they're not reversed, and you can see the difference with general dynamics because it's a different situation altogether, but where you have a competitor, in this case, from eight to four in a major industry, we have, by the way, all of the presumptively illegal markets. We have, by the way, Your Honor, all the times in each pair in which the plaintiffs were injured. This was an ongoing, it was a merger that was allowed in 2013, and we had to stay another eight years. And we suffered during that time, and we pointed out specifically to the court for each city pair. And there were something like 1,600 city pairs in which it was illegally presumptive, presumptive to be illegal. Now, we say, okay, is it only the market percentage? Well, what did we have here? I mean, we had additional information, of course. We had the fact that there were monopoly markets in at least 12 of the airports. We have the 1,600 that were presumptively illegal. We have the industry going from eight majors to four, which controlled over 80% of the market. That's a number that is important. And in the background is the United States policy. And our policy is in favor of competition and not combination. Now, the Supreme Court said that specifically in Brown-Hsu in footnote 72. And what Judge Posner was saying was that those cases held, they had the social and political importance of the antitrust laws. The others do not. The weighing of a baker, if you talk about it, or any of the other cases, that when the courts have adopted something that has fundamentally was made up in 1986, it's in Morris' statement by Mr. Baxter, who was in charge of the antitrust division, and Judge Bork. And they just simply made it up because they didn't like the Supreme Court's decisions. And they especially didn't like Brown. Well, that's too bad. If it's going to be reversed, then it has to be done by the Supreme Court and the Supreme Court alone. Otherwise, the courts are required to follow those decisions, even if it's uncomfortable. And it was uncomfortable for Judge Posner. And he fundamentally said so. And then he did his usual economic analysis. But he pointed out right from the beginning that nobody had to do all this work. But now that you did, okay, so he took advantage of it. All right. I think that's, you're about a minute and a half over. Over? Oh. Yeah. Well. Two minutes goes quickly. I got carried away, Judge. I'm sorry. That's all right. Look, we have your briefs. And so we will reserve decision. But thank you both. Thank you very much. Thank you. Thank you. Have a good day.